IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBERT "MIKE" BAKER AND WENDY BAKER | § § § | |
| *Plaintiffs*, | § § § | |
| v. | § § | Civil Action No. _____ |
| DEERE AND COMPANY D/B/A JOHN DEERE COMPANY | § § § | |
| *Defendants*. | § § | |

## PLAINTIFF ROBERT "MIKE" BAKER'S ORIGINAL COMPLAINT

COME NOW, Plaintiffs Robert "Mike" Baker and Wendy Baker and file this Original Complaint against Defendant Deere and Company D/B/A John Deere Company ("Defendant" or "John Deere"). In support, Plaintiff states the following:

## I.
## PARTIES

1.     Plaintiff Robert "Mike" Baker and Wendy Baker are husband and wife and reside in Waxahachie, Ellis County, Texas.

2.     Defendant John Deere is a Delaware corporation with its principal place of business at One John Deere Place, Moline, IL 61265. John Deere is qualified to do business in the State of Texas and is engaging in business in the State of Texas within the meaning of Section 17.042 of the Texas Civil Practice and Remedies Code. John Deere committed a tort in whole or in part in the State of Texas and caused injury to a Texas resident. Upon information and belief, John Deere has had continuous and systematic contacts with the State of Texas and has contracted with Texas

residents over multiple years. John Deere can be served with citation through its registered agent: C T Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136.

## II.
## JURISDICTION AND VENUE

3.      This Court has personal jurisdiction over the Defendant. At all times relevant to these claims, Defendant had continuing and systematic contacts with the State of Texas and this judicial district by delivering services and products into the stream of commerce with the expectation that they would reach the State of Texas and this judicial district. Further, Defendant had minimum contacts with Texas and this judicial district and was doing business in Texas and this judicial district by, among other things, distributing, marketing, and selling their services and products to residents of the State of Texas and this judicial district.  Defendant has engaged in business in the State of Texas within the meaning of Section 17.042 of the Texas Civil Practice and Remedies Code, committed a tort in whole or in part in the State of Texas, and caused injury to a Texas resident. Upon information and belief, Defendant has had continuous and systematic contacts with the State of Texas and this judicial district and has contracted with Texas residents over multiple years. Plaintiff's claims arise from such contacts and business.

4.      This court has diversity of citizenship, subject-matter jurisdiction over this suit based under 28 U.S.C. § 1332 because this action involves a Texas resident as a Plaintiff, a foreign corporation as the only Defendant, and the amount in controversy in the case exceeds $75,000.

5.      Venue is proper in this District under 28 U.S.C. § 1391 (a)–(d) because, *inter alia*, substantial parts of the events or omissions giving rise to the claim occurred in the District and/or a substantial part of property that is the subject of the action is situated in the District.

### III.
### CONDITIONS PRECEDENT / REQUEST FOR JURY TRIAL

6.      All conditions precedent to Plaintiff's right to recover the relief sought herein have occurred or have been performed.

7.      Plaintiff requests a jury trial on the factual issues triable by jury under Federal Rule of Civil Procedure Rule 38.

### IV.
### FACTUAL SUMMARY

8.      John Deere is an iconic American manufacturer of tractors, including lawn tractors A/K/A ride-on lawn mowers. John Deere prides itself on the quality and longevity of its products. After all, Nothing Runs Like a Deere.

9.      Mike Baker purchased a new John Deere LA 105 (the "Mower") from the Home Depot in April of 2010. He used the Mower to mow the lawn at his house, which he had done safely and without incident for many years.

10.      Mike Baker regularly had the Mower serviced, most recently on 3/27/2017, where the mower was inspected and adjusted as necessary.

11.      Mike Baker continued to operate the Mower without incident until September 5, 2018, when the brakes failed.

12.      When the brakes failed, the mower could not stop and moved onto a slope, which then led to him to hit a bump and be thrown from the mower with the mower blade chopping at his foot, causing multiple open fractures, laceration of intrinsic muscle and tendon at ankle and foot level, and partially amputating his right big toe. He received an open reduction internal fixation surgery with incision and drainage; he still struggles with balance to this day. Mike Baker's wife, Wendy Baker, suffered a loss of consortium in the past and future.

13.     Plaintiffs and John Deere entered into a tolling agreement to toll the statute of limitations until 3/31/2021. This tolling was done because of COVID and to complete certain joint inspections of the mower both at the Baker residence in Waxahachie, Texas and at a laboratory in Houston, Texas.

## V.
## CAUSES OF ACTION

STRICT PRODUCT'S LIABILITY—DESIGN DEFECT

14.     Plaintiff incorporates all prior and subsequent paragraphs as if fully restated and re-alleged herein.

15.     The braking system is defectively designed because the brakes can fail during ordinary use.  Here, when the operator presses the brake pedal, it pulls a lever, and the lever rotates a shaft that applies the friction brake via a mechanical brake caliper. Unfortunately, with this design, an aluminum block on the brake pedal linkage comes in contact with a transmission bracket and interferes with its movement, which limits the brake caliper's ability to create friction and which reduces brake force, which ultimately limits the operator's ability to stop the mower, even though there is plenty of brake pad friction material remaining and the brake pedal is pushed all the way to the end of its effective travel. This defect is similar even when the parking brake is engaged.

16.     There is a safer alternative design that would expand the area available for the lever to traverse so that the aluminum block would not contact the transmission bracket aluminum block or the metal bracket when the brake pedal is depressed. First, the transmission bracket that the lever is striking could be redesigned or repositioned such that it is at a different angle and proximity so as to eliminate its interference with the brake pedal linkage and aluminum block.  These designs

are both economically and technologically feasible given that it would utilize the same or similar materials that are used in the current iteration.

17.     Alternatively, a safer alternative design would be for the Mower to have had a seatbelt to prevent the operator from being thrown from the Mower. Seatbelts are, of course, technologically feasible. The seatbelt is economically feasible because the seatbelt would add about $30 to the cost of the mower.

18.     Alternatively, a safer alternative design would be for the Mower to have a guard that would prevent a human foot from going under the mower blades.

### STRICT PRODUCT'S LIABILITY—FAILURE TO WARN

19.     Defendant designed, manufactured, tested, marketed and distributed into the stream of commerce the Mower. The mower was in substantially the same condition at the time it left the Defendants' possession and entered into the stream of commerce.

20.     The Mower, which was placed into the stream of commerce by Defendants and purchased and used by Plaintiff, was defective because it was not accompanied by an adequate warning.

21.     In particular, Defendant knew or should have known that the Mower's breaks were subject to early failure and the user could experience brake failure during ordinary use, which would prevent the mower from stopping and cause an accident like the one that occurred in this case. The warnings to test the brakes prior to use were inadequate to warn the user that even if the brakes worked prior to use that the brakes could still fail during the mowing operation. Such failure, in turn, may give rise to physical injury, pain and suffering, debilitation and the mower blades striking the feet of the user who exits the mower.

22.    Alternatively, Mike Baker misused the mower in a reasonably foreseeable manner by not having the brakes and/or parking brake adjusted that Deere failed to warn about in the user manual.

**COUNTS IN THE ALTERNATIVE: NEGLIGENCE**

23.    Plaintiff incorporates by reference all of the above related paragraphs, as well as those below, with the same force and effect as if fully set forth herein.

24.    Defendant had a duty to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, selling, testing, quality assurance, quality control, and in the distribution of the Mower into the stream of commerce, including a duty to assure that the Mower would not cause harm to those who use it or who are around users.

25.    Defendant failed to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, sale, testing, quality assurance, quality control and distribution of the Mower into interstate commerce. Defendants knew or should have known that those individuals that were using the mower were at risk for suffering harmful effects from it, including a complete loss of braking power that results in the user being thrown from the mower and experiencing severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life. Wendy Baker sustained past and future loss of consortium and a loss of household services in the past and future.

26.    The negligence of Defendants, their agents, servants and employees, included but was not limited to the following acts and/or omissions:

a.  Negligently    designing    the    Mower    in    a    manner    which    was dangerous to those individuals who would be using the mower;

b. Designing, manufacturing, producing, creating and promoting the Mower without adequately, sufficiently or thoroughly testing it;

c. Not conducting a sufficient testing program to determine whether or not the Mower was safe for use;

d. Marketing and selling the Mower when Defendants knew or should have known that it was unsafe and unfit for use because of the dangers to its users;

e. Selling the Mower without making proper and sufficient tests to determine the dangers to its users;

f. Negligently failing to adequately and correctly warn Plaintiff of the dangers of the Mower;

g. Negligently failing to recall their dangerous and defective Mower at the earliest date that it became known that the Mower and/or its braking system or braking design or braking warnings was/were, in fact, unreasonably dangerous and defective;

h. Failing to provide adequate instructions regarding safety precautions to be observed by users who would operate the mower without knowing anything about braking adjustments;

i. Negligently representing that the Mower was safe for use for its intended purpose, when, in fact, it was unsafe;

j. Negligently representing that the Mower offered low wear and high stability, when, in fact, the opposite was true;

k. Negligently manufacturing the Mower in a manner that was dangerous to those individuals who drove it;

l.   Negligently producing the Mower in a manner that was dangerous to those individuals who drove it;

m.   Negligently ensuring the proper assembly of assembling the Mower in a manner, that was dangerous to those individuals who drove it; and

n.   Negligently under-reporting, underestimating and downplaying the serious dangers of the Mower by changing the brake pads without warning the customers the reason for the change.

27.     Defendants were further negligent in the designing, researching, supplying, manufacturing, promoting, packaging, distributing, testing, advertising, warning, marketing and sale of the Mower in that they:

a.   Failed to use due care in designing and manufacturing the Mower so as to avoid the risks to individuals that would operate it

b.   Failed to accompany the Mower with proper warnings to warn of sudden brake failure;

c.   Failed to accompany their product with proper instructions for use;

d.   Failed to conduct adequate testing, including pre-sale and post-sale testing and post-marketing surveillance to determine the safety of the Mower; and

e.   Were otherwise careless and negligent.

28.     Despite the fact that Defendant knew or should have known that the Mower caused harm to individuals, Defendants continued to market, manufacture, distribute and sell the Mower.

29.     Defendant knew or should have known that consumers, such as Plaintiff would suffer foreseeable injury and be at increased risk of suffering an injury as a result of Defendant's failure to exercise ordinary care, as set forth above.

30.    Defendants' negligence was the proximate cause of Plaintiffs physical, mental and emotional injuries and harm, and economic loss, which they have suffered and/or will continue to suffer.

31.    By reason of the foregoing, Plaintiff experienced severe harmful effects including but not limited to partial and temporary complete loss of mobility, loss of range of motion, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life. Wendy Baker sustained past and future loss of consortium and a loss of household services in the past and future.

32.    Plaintiff alleges that the Defendant violated the applicable standard of ordinary care by failing to act as a reasonably prudent person would under the same or similar circumstances.

## COUNTS IN THE ALTERNATIVE: GROSS NEGLIGENCE

33.    Plaintiff incorporates all prior and subsequent paragraphs as if fully restated and re-alleged herein.

34.    Plaintiff alleges that Defendant's conduct, as described above and as will be more developed at trial, constitutes gross negligence as defined by Texas law. The Defendants' conduct, when viewed objectively from the Defendants' standpoint, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and the Defendants had actual, subjective awareness of the risk involved, but nevertheless proceeded with a conscious indifference to the rights, safety and welfare of others, including Plaintiff. The Defendants' gross negligence was a proximate cause of the occurrence made the basis of this action and all of Plaintiff's resulting injuries and damages.

## VI.
## DAMAGES, COSTS, AND INTEREST

35.     Plaintiff incorporates all prior and subsequent paragraphs as if fully restated and re-alleged herein.

36.     As a direct proximate result or as a producing cause of the acts and/or omissions described above, Plaintiff has suffered injuries and damages for which Plaintiff seeks recovery from Defendants.

37.     As applicable, Plaintiff seeks full and fair compensation for actual damages.

38.     As applicable, Plaintiff seeks attorneys' fees.

39.     As applicable, Plaintiff seeks treble damages.

40.     As applicable, Plaintiff seeks exemplary or punitive damages considering (1)    the nature of the wrong; (2)  the character of the conduct involved;  (3)  the degree of culpability of the wrongdoer;  (4)  the situation and sensibilities of the parties concerned; (5)  the  extent  to which  such  conduct  offends  a  public  sense of justice and propriety; and  (6) the net worth of the defendant.

41.     Plaintiff seeks personal injury damages in amounts the jury deems to be fair and reasonable consisting of the following:

- Past and future physical pain and mental anguish;

- Past and future disfigurement;

- Past and future loss of earnings and earning capacity;

- Past and future physical impairment;

- Past and future medical and healthcare expenses and mental care expenses;

- Past and future loss of consortium and household services; and/or

- Any other actual or compensatory damages allowable by law.

42.     Plaintiff also seeks recovery for all costs of court and prejudgment and post-judgment interest at the maximum rates allowed by law.

**VII.**
**PRAYER**

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendants and award Plaintiff the following relief:

(i)     A sum of money—as determined by a jury to be fair and reasonable—within the jurisdictional limits of this Court for the damages indicated above, at the Plaintiff's election of remedy, to the extent applicable;

(ii)    Pre-judgment and post-judgment interest at the maximum amount allowed by law;

(iii)   Costs of suit; and

(iv)    Such other and further relief to which Plaintiff may be justly entitled.

RESPECTFULLY SUBMITTED:

**THE LAW OFFICES OF**
**FRANK L. BRANSON, P.C.**

*/s/ John Tindall Burkhead*
John Tindall Burkhead
Texas Bar No. 24072010
*jburkhead@flbranson.com*

Highland Park Place
4514 Cole Avenue, 18th Floor
Dallas, Texas 75205
214.522.0200 [Telephone]
214.521.5485 [Facsimile]